IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38963

| STATE OF IDAHO, | ) | 2012 Unpublished Opinion No. 755 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: December 5, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| AMBER RAE ROUND, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Timothy Hansen, District Judge.

Judgment of conviction for possession of a controlled substance, affirmed.

Sara B. Thomas, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant. Sally J. Cooley argued.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent. Russell J. Spencer argued.

_____

SCHWARTZMAN, Judge Pro Tem

Amber Rae Round appeals from her judgment of conviction for possession of a controlled substance. For the reasons set forth below, we affirm.

I.

FACTS AND PROCEDURE

On the evening of August 10, 2009, officers arrested an individual for possession of ten ounces of methamphetamine. One of the vehicles involved was a white Ford Explorer, which was parked in a lot by a theatre. A drug detection dog alerted on the white vehicle, and a search of the vehicle revealed a baggie of methamphetamine together with a gun and clip. The white vehicle was left in the parking lot overnight. Early the next morning, two officers returned to the location of the white vehicle in separate, unmarked cars and observed that a black vehicle was parked about ten to fifteen feet away from the white vehicle. The officers also observed an individual related to the events of the previous evening reaching into the passenger side of the white vehicle. As the officers pulled into the parking lot, the black vehicle drove away down an

1

alley. One officer approached the individual who was reaching inside the white vehicle while the other officer drove after the black vehicle.

The first officer called for the assistance of uniformed officers and a drug detection dog, while the other officer initiated a traffic stop of the black vehicle to determine the involvement of the driver with the white vehicle and the individual reaching inside the white vehicle. The officer recognized the driver of the black vehicle as Round, with whom he had previous contact when Round was frequenting a place where methamphetamine was being used and the officer had learned she was involved in using methamphetamine and, perhaps, providing it to others. The officer approached the black vehicle and noted that Round appeared agitated and nervous. The officer explained his concerns regarding the white vehicle and Round's proximity to it. Round responded that she was just dropping off the individual that was seen reaching inside the white vehicle. However, given Round's demeanor and the officer's previous contact with her, the officer believed she had drugs in her vehicle. The officer asked Round for consent to search her vehicle and she initially declined. The officer then explained to Round his reasons for asking permission to search. At that point, Round informed the officer that she wanted to call her attorney and the officer told her she could do so. Round moved a short distance away from her vehicle and used her cell phone to call the attorney. Round spoke with her attorney for somewhere between five to ten minutes and then handed the phone to the officer. The officer spoke with the attorney for two to three minutes. While Round was on the phone with her attorney, another officer arrived with a drug detection dog and went around the vehicle. After the dog detected on Round's vehicle, a search revealed methamphetamine. The officer estimated that the entire time of his contact with Round lasted between fifteen to twenty minutes from the stop of her vehicle to her eventual arrest.

Round was charged with possession of a controlled substance. I.C. § 37-2732(c). She filed a motion to suppress, asserting that evidence found in her vehicle was obtained in violation of her rights under the Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution. After a hearing, the district court denied Round's motion. Round was found guilty by a jury of possession of a controlled substance. The district court sentenced Round to a unified term of seven years, with a minimum period of confinement of two years, but retained jurisdiction. Following the period of retained jurisdiction, the district court entered an order suspending Round's sentence and placing her on probation for seven years. Round appeals.

## ANALYSIS

Round argues that the district court erred by denying her motion to suppress. Specifically, Round asserts that the officer who initiated the stop of her vehicle impermissibly expanded the scope of her detention beyond its initial purpose and improperly extended the duration of such detention. Thus, Round concludes that the officer violated her Fourth Amendment right to be free from unreasonable seizure.[1]

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The determination of whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe,* 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). An investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon,* 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). Round *concedes* that her initial detention by the officer was justified at its inception. Therefore, we address only whether the officer impermissibly expanded the scope of Round's detention beyond its initial purpose and improperly extended the duration of such detention.

### A. Scope of Detention

Round asserts that, once she informed the officer that she was only in the area of the white vehicle to drop off the individual seen reaching inside the vehicle, the officer had no

---

[1] Round does not assert that the Idaho Constitution provides any greater protection than the United States Constitution and relies upon Fourth Amendment jurisprudence on appeal.

reason to suspect that she was involved with illegal activities associated with the white vehicle. Round further asserts that her previous contact with the officer and nervous and agitated state did nothing to add to any such suspicion. Therefore, Round concludes that the officer lacked justification for his request to search her vehicle and her continued detention violated her Fourth Amendment right to be free from unreasonable seizure.

Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe,* 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Roe,* 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305.

In the order denying Round's motion to suppress, the district court determined that the stop of Round's vehicle was drug-related from its inception. Accordingly, the district court determined that the officer's questioning of Round about her possible possession of drugs was related to the basis for the stop. Thus, the district court concluded that the officer's request to search Round's vehicle was within the scope of the initial detention.

Substantial evidence supports the district court's determination that the stop of Round's vehicle was drug-related from its inception. Specifically, before the officer effectuated the stop of Round's vehicle, he observed circumstances that contributed toward development of reasonable suspicion of drug activity. At the hearing on Round's motion to suppress, the officer testified that, when he arrived at the lot where the white vehicle was parked, he observed a black vehicle parked within ten to fifteen feet of the white vehicle, and then the black vehicle drove away. The officer also testified that he was aware the white vehicle had been part of drug-related activity involving methamphetamine the previous evening and wanted to determine the involvement of the driver of the black vehicle with the white vehicle and the individual seen reaching inside the white vehicle. The officer further testified that, once he approached the black vehicle, he recognized the driver as Round, with whom he had previous contact related to her use and possible distribution of methamphetamine, and observed that she appeared agitated and nervous.

Round argues that, once she informed the officer she was only in the area of the white vehicle to drop off the individual seen reaching inside the vehicle, the officer had no reason to suspect that she was involved with illegal activities associated with the white vehicle. However, the officer was not obligated to believe Round. While Round also asserts that her previous

4

contact with the officer and nervous and agitated state were irrelevant, an officer's previous knowledge of the defendant may be relevant to the determination of whether there is reasonable suspicion that a detained person is engaged in criminal activity. *See State v. Gibson*, 141 Idaho 277, 284, 108 P.3d 424, 431 (Ct. App. 2005); *Sheldon*, 139 Idaho at 985, 88 P.3d at 1225; . Additionally, although it is common for people to exhibit signs of nervousness when confronted with law enforcement and, thus, a person's nervous demeanor during an investigative detention is of limited significance in establishing reasonable suspicion of criminal activity, consideration of nervousness is not completely irrelevant to the analysis of reasonable suspicion. *See Gibson*, 141 Idaho at 285, 108 P.3d at 432. We agree with the district court's determination that the officer's questioning of Round regarding her possible possession of drugs was related to the basis for the stop of her vehicle and that the officer's request to search her vehicle was within the scope of the initial detention. Thus, the officer who initiated the stop did not impermissibly expand the scope of Round's detention by requesting permission to search her vehicle.

## B. Duration of Detention

Round also asserts that her continued detention for the purpose of allowing a drug detection dog to sniff the exterior of her vehicle violated her Fourth Amendment right to be free from unreasonable seizure. An investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Roe,* 140 Idaho at 181, 90 P.3d at 931; *State v. Gutierrez,* 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. *Florida v. Royer*, 460 U.S. 491, 500 (1983). There is no rigid time limit for determining when a detention has lasted longer than necessary. *State v. Ramirez*, 145 Idaho 886, 889, 187 P.3d 1261, 1264 (Ct. App. 2008). A drug dog sniff is not considered a search and may be done during an investigative stop, but the use of the drug dog may not lengthen the duration of the stop after its purpose has been fulfilled. *Illinois v. Caballes*, 543 U.S. 405, 409-10 (2005); *State v. Bordeaux*, 148 Idaho 1, 8, 217 P.3d 1, 8 (Ct. App. 2009).

As determined above, substantial evidence supports the district court's determination that the stop of Round's vehicle was drug-related from its inception. Both before and after the officer stopped Round's vehicle, he observed circumstances that contributed toward development of reasonable suspicion of drug activity. Taken together, these observations gave rise to the reasonable suspicion necessary to detain Round to verify or dispel that reasonable suspicion. The parties do not dispute the following facts found by the district court in its order denying

Round's motion to suppress: (1) the lapsed time of the officer's contact with Round was fifteen to twenty minutes from the stop of her vehicle to her arrest; (2) a majority of that time involved a cell phone conversation between Round and her attorney initiated by Round and a conversation between the officer and the attorney initiated by the attorney; (3) before Round's conversation with her attorney was concluded, the drug detection dog arrived and began the pass around her vehicle that resulted in detection of methamphetamine for which she was arrested. Although Round contends that the officer impermissibly continued to detain her for the purpose of allowing the drug detection dog to arrive, the district court found that the officer had no motivation to allow Round to contact her attorney as a delay tactic. Further, even if Round had not called her attorney, given the circumstances of this case, the officer acted reasonably in detaining Round for a few extra minutes in order for the drug detection dog to arrive to verify or dispel his reasonable suspicion of drug activity. *See State v. Brumfield*, 136 Idaho 913, 917, 42 P.3d 706, 710 (Ct. App. 2001) (detention of forty-nine minutes, including thirty-minute delay awaiting arrival of drug dog, upheld based upon reasonable suspicion of drug activity). Thus, we agree with the district court's conclusion that the time used by the officer was necessary to complete his investigation into Round's connection with the white vehicle which formed the basis for the stop. Therefore, use of the drug detection dog during the stop of Round's vehicle did not constitute an unlawful extension of that stop.

## III.

## CONCLUSION

The officer who initiated the stop of Round's vehicle did not impermissibly expand the scope of her detention beyond its initial purpose and did not improperly extend the duration of such detention. Accordingly, the officer did not violate Round's Fourth Amendment right to be free from unreasonable seizure. Therefore, Round's judgment of conviction for possession of a controlled substance is affirmed.

Judge LANSING and Judge GUTIERREZ, **CONCUR.**

6