IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 45148

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: September 25, 2018 |
| Plaintiff-Respondent, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| NILES BRAD HARLOW, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Steven Hippler, District Judge.

Order denying motion to suppress and judgment of conviction, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Ted S. Tollefson, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Niles Brad Harlow appeals from the judgment of conviction entered upon the jury verdict finding him guilty of possession of methamphetamine. Harlow argues the district court erred in denying his motion to suppress because he was in custody and interrogated, but was not advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1996). We determine the district court correctly concluded that Harlow was not in custody when he was asked about and admitted to ownership of the baggie of methamphetamine. Because Harlow was not in custody when he made the incriminating statement, *Miranda* warnings were not required. We affirm the district court's denial of Harlow's motion to suppress and the judgment of conviction.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

At 1:47 a.m., Harlow drove his truck off the road and parked near a semi-truck trailer. An officer observed Harlow and was concerned Harlow might steal pallets from the semi-truck

1

trailer. The officer parked near Harlow's truck and turned on the patrol spotlight, but the officer did not activate the overhead lights. The officer walked to the passenger side of Harlow's truck and asked if everything was okay. Harlow responded he was having car trouble and his truck had been smoking. The officer did not smell any smoke and proceeded to walk towards the driver's side of Harlow's truck. Before the officer reached the driver's side, Harlow exited the truck.

While conversing with Harlow, the officer noticed a baggie near Harlow's feet which contained a white crystalline substance. Based on his training and experience, the officer recognized the substance as methamphetamine. The officer instructed Harlow to keep his hands behind his back and sit on the rear bumper of the truck. The officer explained that he believed the baggie contained methamphetamine, and he called for a canine assist. Harlow denied the baggie was his.

Because the officer believed Harlow was under the influence of methamphetamine and becoming more agitated, the officer patted Harlow down and placed him in handcuffs. At no time did the officer advise Harlow of his *Miranda* rights. The officer and Harlow discussed Harlow's prior criminal history, and the officer commented that Harlow appeared to be under the influence. A canine officer and a third officer arrived at the scene. The canine performed an exterior search of Harlow's truck and alerted.

The initial officer assisted briefly in the search of Harlow's truck, but then returned to speak with Harlow. The officer explained to Harlow that, although there was enough evidence to arrest him at that point, Harlow had other options. One of these options involved Harlow providing information to a narcotics detective as a confidential informant. When Harlow expressed interest in working with law enforcement, the officer removed the handcuffs. After removing the handcuffs, the officer informed Harlow he would not be arrested that night, but stressed that Harlow needed to be honest about the baggie of methamphetamine at the scene. The officer explained that Harlow would go to jail if he was unwilling to be honest. The officer then asked if the baggie belonged to Harlow, and Harlow nodded his head. Based on the belief that Harlow was under the influence of methamphetamine, the officer did not want Harlow to drive. The officer offered to give Harlow a ride home and Harlow accepted.

Harlow did not become a confidential informant, and the State eventually charged Harlow with felony possession of a controlled substance, Idaho Code § 37-2732(c). Harlow filed

a motion to suppress all statements made to law enforcement since Harlow was not read his *Miranda* rights. Following a hearing, the district court issued a memorandum decision and order denying Harlow's motion to suppress. The case proceeded to trial where a jury found Harlow guilty. The district court imposed a unified sentence of six years, with two years determinate. The district court suspended the sentence and placed Harlow on probation. Harlow timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Although Harlow contends that both constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Harlow's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

## III.

## ANALYSIS

Harlow argues the district court erred in denying his motion to suppress. Specifically, Harlow asserts he was interrogated by the officer while in custody, but was not advised of his *Miranda* rights. At trial and on appeal, the State concedes that no *Miranda* warning was provided to Harlow. Additionally, the State concedes the questioning that elicited a confession regarding ownership of the controlled substance was an interrogation.[1] Therefore, the issue in

---

[1]     The State does not concede the discussion between Harlow and the officer when Harlow was handcuffed and asked about becoming a confidential informant amounted to an interrogation or the functional equivalent.

this case is whether Harlow was in custody at the time he admitted ownership of the methamphetamine, such that a *Miranda* warning was required.[2]

The requirement for *Miranda* warnings is triggered by custodial interrogation. *State v. Medrano*, 123 Idaho 114, 117, 844 P.2d 1364, 1367 (Ct. App. 1992). The United States Supreme Court equated custody with a person being deprived of his or her freedom by the authorities in any significant way. *Miranda*, 384 U.S. at 478. This test has evolved to define custody as a situation where a person's freedom of action is curtailed to a degree associated with formal arrest. *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984); *State v. Myers*, 118 Idaho 608, 610, 798 P.2d 453, 455 (Ct. App. 1990). The initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 323 (1994). To determine if a suspect is in custody, the only relevant inquiry is how a reasonable person in the suspect's position would have understood his or her situation. *Berkemer*, 468 U.S. at 442; *Myers*, 118 Idaho at 611, 798 P.2d at 456.

A court must consider all of the circumstances surrounding the interrogation. *Stansbury*, 511 U.S. at 322; *State v. James*, 148 Idaho 574, 577, 225 P.3d 1169, 1172 (2010). Factors to be considered may include the degree of restraint on the person's freedom of movement (including whether the person is placed in handcuffs), whether the subject is informed that the detention is more than temporary, the location and visibility of the interrogation, whether other individuals were present, the number of questions asked, the duration of the interrogation or detention, the time of the interrogation, the number of officers present, the number of officers involved in the interrogation, the conduct of the officers, and the nature and manner of the questioning. *See Berkemer*, 468 U.S. at 441-42; *James*, 148 Idaho at 577-78, 225 P.3d at 1172-73. The burden of showing custody rests on the defendant seeking to exclude evidence based on a failure to administer *Miranda* warnings. *James*, 148 Idaho at 577, 225 P.3d at 1172.

---

[2]  In its memorandum decision on Harlow's motion to suppress, the district court analyzed whether Harlow was in custody at the time he confessed to ownership of the drugs. Although the district court acknowledged the period of time in which Harlow was handcuffed, the district court did not address whether the conversation about becoming a confidential informant qualified as a custodial interrogation. Harlow has not argued how the district court was mistaken when it limited its custody analysis to the time after the handcuffs were removed when Harlow made an incriminating statement. Without more, we focus our opinion on the district court's holding and the grounds for that holding.

Harlow argues he was subjected to a custodial interrogation, such that a *Miranda* warning was required. Harlow asserts that he was in custody during the traffic stop since he was patted down and placed in handcuffs. According to Harlow, a custodial interrogation occurred because, at the time Harlow was handcuffed, the officer stated, "I know this is your methamphetamine" and proceeded to ask Harlow to work as a confidential informant. Since Harlow was not free to leave during this conversation, Harlow argues the officer was obligated to provide *Miranda* warnings before asking Harlow if he would be willing to work as a confidential informant and before any conversation thereafter.

Harlow's argument appears to focus on the questioning that begins with the officer asking Harlow if he would be willing to work as a confidential informant and continues until Harlow admits the methamphetamine belongs to him. However, the issue in this case is whether Harlow was in custody at the time he admitted his ownership of the methamphetamine, not when he was asked about his willingness to work as a confidential informant.

After Harlow agreed to be a confidential informant, the officer removed the handcuffs. The district court held that *Miranda* rights were not necessary because Harlow was not in custody when he admitted ownership of the baggie of methamphetamine. Harlow has failed to demonstrate the district court erred.

An officer's use of handcuffs--alone and without other conditions of interrogation--does not always result in a custodial interrogation such that *Miranda* warnings are required.[3] Just as a noncustodial detention can become custodial for the purposes of *Miranda* warnings, a custodial detention may also become noncustodial. *State v. Munoz*, 149 Idaho 121, 129, 233 P.3d 52, 60 (2010). In *Munoz*, the defendant was handcuffed and patted down during a traffic stop. *Id.* at 124, 233 P.3d at 55. The officers removed the handcuffs from Munoz when they realized they had mistaken his identity. *Id.* After the handcuffs were removed, Munoz was asked whether the marijuana was his and he answered that it was. *Id.* In its analysis, the Idaho Supreme Court explained the defendant has the burden of proving that, at the time he was questioned, he was in

---

[3] The district court analyzed other circumstances of the stop, which included the location of the stop, how many officers were present, whether patrol lights were activated, the officer's demeanor during the encounter, and whether weapons were drawn. The district court also analyzed whether the officer issued a threat to Harlow and whether a threat may transform a non-custodial questioning into the functional equivalent of an arrest. Finally, the district court analyzed Harlow's perceived intoxication and whether the ride in the patrol car constituted an arrest. On appeal, the parties do not challenge these findings from the district court.

5

custody for the purposes of *Miranda*. *Munoz*, 149 Idaho at 129, 233 P.3d at 60. Even though Munoz was initially handcuffed, the Court held that Munoz was not in custody when he was questioned about the marijuana and, thus, *Miranda* warnings were not required. *Munoz*, 149 Idaho at 129, 233 P.3d at 60.

Here, like *Munoz*, the officer handcuffed Harlow, but then removed the handcuffs before asking about the drugs at issue. Based on all the circumstances, Harlow has failed to persuade us that the district court erred in holding Harlow was not in custody when he was not in handcuffs and was told he would not be arrested. Because Harlow was not in custody when he admitted owning the methamphetamine, the district court did not err in holding *Miranda* warnings were not required.

## IV.
## CONCLUSION

The district court correctly concluded that Harlow was not in custody when he was asked about and admitted to ownership of the baggie containing methamphetamine. Because Harlow was not in custody when he made the incriminating statement, *Miranda* warnings were not required. We affirm the district court's denial of Harlow's motion to suppress and the judgment of conviction.

Judge GUTIERREZ and Judge LORELLO **CONCUR**.