## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 51713

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: March 26, 2026 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| LACEY LOUISE SHUBIN, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Steven Hippler and Hon. Cheri C. Copsey, District Judges.

Judgment of conviction for possession of a controlled substance and possession of drug paraphernalia, affirmed.

Erik R. Lehtinen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge Pro Tem

Lacey Louise Shubin appeals from her judgment of conviction for possession of a controlled substance and possession of drug paraphernalia. We affirm.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

Officers responded to the parking lot of a grocery store for a welfare check. The reporting party advised that there was a woman, later identified as Shubin, "asleep or passed out" inside a vehicle. The reporting party had attempted to wake Shubin by knocking on the vehicle window, but she did not respond. The reporting party spent about one hour inside the grocery store, and when she came back outside, Shubin was in the same position. The reporting party tried to wake Shubin again and then called 911. When officers arrived, one patrol vehicle parked in front of

1

Shubin's vehicle and the other patrol vehicle parked behind it so that her vehicle was unable to leave.

The officers approached the vehicle on foot and observed Shubin in the driver's seat, she was alone in the vehicle, the engine was running, and the keys were in the ignition. Shubin was slumped over to the right toward the center console. For approximately 10-15 seconds, the officers watched Shubin and evaluated the situation. One of the officers reported that Shubin's eyes were partially open, "then shut really quickly." An officer then loudly announced himself and knocked on the vehicle window. Shubin awoke and acknowledged the officer's presence. The officer asked Shubin to turn the vehicle off, which she did.

The officer talked to Shubin for about one minute while she was in the vehicle. Shubin denied that she had been sleeping and said she was just looking at her phone. Shubin also said that she had only been in the vehicle for a few minutes. Shubin said she did not need medical attention. The officer then asked Shubin to exit the vehicle, and she did.

Outside the vehicle, the officer asked questions about Shubin's health; if she was on any medications; whether she had ever fallen asleep at the wheel before; and when she had last slept, eaten, and consumed alcohol. Shubin responded to the questions but seemed confused and offered irrelevant information. Shubin stated that she was "kind of" an alcoholic but had not consumed alcohol the previous night. The officer reported that he smelled alcohol coming from Shubin. The officer performed the gaze nystagmus test which did not indicate alcohol impairment. The officer still believed Shubin was unable to safely drive and asked if she had anyone that could pick her up from the parking lot.

The officer asked if the other officers present could search Shubin's vehicle and she consented. The other officers located drug paraphernalia and methamphetamine in the vehicle. Shubin was arrested and transported to the jail, where methamphetamine was found on her person. Shubin was charged with possession of a controlled substance (I.C. § 37-2732(c)), possession of drug paraphernalia (I.C. § 37-2734A), and introduction of contraband into a correctional facility (I.C. §§ 18-2510(3), 19-2520F).

Prior to trial, Shubin filed a motion to suppress, arguing the officers unlawfully extended the seizure. The district court denied the motion to suppress, and a trial was held. Shubin was

found guilty of possession of a controlled substance and possession of drug paraphernalia and was found not guilty for the introduction of contraband into a correctional facility. Shubin appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

On appeal, Shubin argues the district court erred in denying her motion to suppress. Specifically, Shubin asserts the officers were not justified in extending the seizure after they confirmed she was not in need of assistance. Shubin further contends the extended seizure was not supported by specific articulable facts sufficient to support reasonable suspicion. The State responds that Shubin has failed to show that the district court erred in denying the motion to suppress because the extension of Shubin's detention was supported by reasonable suspicion. We agree.

The determination of whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). An investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). Such a detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Gutierrez*, 137

Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). Where a person is detained, the scope of the detention must be carefully tailored to its underlying justification. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. In this regard, we must focus on the intensity of the detention, as well as its duration. *Roe*, 140 Idaho at 181, 90 P.3d at 931. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Id.*; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. Brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. *Roe*, 140 Idaho at 181, 90 P.3d at 931.

The community caretaking function involves the duty of police officers to help individuals an officer believes may be in need of assistance. *State v. Deccio*, 136 Idaho 442, 445, 34 P.3d 1125, 1128 (Ct. App. 2001). In order for an officer's intrusion to be justified by the community caretaking function, the officer must possess a subjective belief that the individual is in need of immediate assistance. *Id*. Under the community caretaking function, law enforcement has the authority to conduct a temporary seizure when a vehicle threatens public safety. *State v. Van Zanten*, 173 Idaho 620, 625, 546 P.3d 163, 168 (2024).

The district court found that the officers were concerned that Shubin needed immediate medical assistance when they first approached her. The district court found that, while the officer did not note any immediate signs of drugs or alcohol, he testified that Shubin's disoriented responses to the officer's questions during their initial conversation had caused him concern for Shubin's mental state. Based on this concern, the officer asked Shubin to exit her vehicle so they could discuss the situation. When Shubin exited her vehicle, approximately one minute had passed since the officer first woke Shubin up. Shubin shared with the officer that Shubin had taken a sleeping pill and drank alcohol the night before and had not eaten food since the prior day. Shubin told the officer that Shubin was "kind of" an alcoholic and had a previous driving under the influence conviction. The officer noted that he smelled alcohol on her breath. Shubin was unable to provide any explanation for why she was unconscious in a running vehicle. The officer then asked Shubin if the other officers could search Shubin's vehicle for illegal drugs and she immediately consented. During the search, the officer continued to talk to Shubin and encouraged her to call someone to come pick her up because the officer remained concerned about Shubin's ability to safely drive her vehicle. Shubin agreed someone could come get her, but her phone was

4

dead, and she could not remember anyone's phone number. At this time, the officers searching Shubin's vehicle found a pipe containing methamphetamine and she was arrested.

The State conceded to the district court that Shubin was seized for the entire police encounter because the officers' patrol vehicles were blocking Shubin's vehicle from leaving. On appeal, Shubin does not dispute that the initial seizure was justified by the community caretaking function. Shubin argued below and maintains on appeal that the officer did not have reasonable suspicion to order Shubin to exit her vehicle. However, the district court found that the circumstances leading up to the exit order gave rise to reasonable suspicion that Shubin was potentially driving while intoxicated or otherwise unsafe to drive. The officer knew Shubin had been passed out in a running vehicle and was unable to be roused, although the officer did not yet know that Shubin had been there for over an hour. The officer also noted Shubin was mumbling while speaking and lacked awareness that she had just been unconscious. Finally, the officer noted Shubin's disorientated condition which led the officer to be concerned for Shubin's mental state. Considering the totality of the circumstances, the officer was justified in asking Shubin to exit her vehicle based on the officer's reasonable suspicion of criminal activity. Shubin consented to the search of her vehicle while the officer attempted to help Shubin acquire a ride to safely leave the parking lot. The district court's findings are supported by substantial evidence, including the record and testimony from the officer at the scene. The district court's conclusion that these findings were sufficient to support reasonable suspicion adequate to justify briefly extending the detention was not error. Shubin has failed to show that the district court erred in denying her motion to suppress.

## IV.
## CONCLUSION

Shubin has failed to show the district court erred in finding that her detention was supported by reasonable suspicion and in denying her motion to suppress. Accordingly, Shubin's judgment of conviction for possession of a controlled substance and possession of drug paraphernalia is affirmed.

Chief Judge TRIBE and Judge GRATTON, **CONCUR**.

5